JOHN C. MELCHER
AISLINN W. SHAUL-JENSEN
Assistant Attorneys General
Agency Legal Services Bureau
1712 Ninth Avenue
P.O. Box 201440
Helena, MT 59620-1440
Telephone: (406) 444-2026
Facsimile: (406) 444-4303
jomelcher@mt.gov

COUNSEL FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS WILSON, BALTEZAR, SEGOVIA, DOE #1, DOE #2, DOE #3, MICHELLE STEYH, sued in their individual capacities,<br><br>Defendants. | Case No. CV 17-00119-H-DLC-JTJ<br><br>**AFFIDAVIT OF**<br>**BILLIE REICH** |

STATE OF MONTANA        )
                                              :ss
County of Powell              )

      I, BILLIE REICH, declare under penalty of perjury that the following is true

and correct:

1. I am a competent adult citizen of the State of Montana, I am competent to testify, and I have personal knowledge of the following facts.

2. I am not a party to this lawsuit, but I am familiar with the facts involved.

3. I currently am employed by the Montana Department of Corrections (DOC) as the program manager of the grievance, disciplinary departments at Montana State Prison (MSP). I have held this position since November 26, 2017.

4. From May 1, 2006, to November 26, 2017, I was employed by DOC as a grievance coordinator/classification officer at MSP.

5. As grievance coordinator/classification officer, I was responsible for reviewing grievances filed by the inmates housed in MSP and maintaining the inmates' grievance files.

6. As a grievance coordinator/classification officer, I also oriented inmates on the grievance program.

7. When inmates arrive at MSP, they are required to attend an orientation, which includes an explanation of the process and procedures of the grievance program. An inmate is excused from this orientation if he has come from a regional facility that has adopted MSP's grievance procedure.

8. Mr. Smith currently is an inmate at MSP.

9. Mr. Smith completed orientation – including the orientation on the grievance process – at MSP on January 15, 2012, as noted on his Orientation Acknowledgement Form, a true and correct copy of which is attached as Exhibit A.

10. During orientation, grievance staff tells inmates that if they do not exhaust their administrative remedies for classifications, grievances, or disciplinary decisions, they will be unable to challenge the issue in court. In other words, it is made clear to the inmates that failure to properly grieve could result their inability to bring a court case later.

11. I am also aware that many inmates communicate amongst themselves about the grievance process, how to use it, and the consequences of not using it. In my experience, inmates often help each other to complete grievances or appeals.

12. As Grievance Coordinator, I was almost always available during regular working hours to answer questions on the grievance process at MSP. If an inmate indicated to me (for example, by directing a kite to me) that he had a question on the grievance process, I would always try to answer the question and/or provide copies of the applicable policies or forms either in writing or in person. I have often answered questions from inmates in the past to help them appropriately fill out a grievance form. I also tell the case managers in the units to direct inmates to me with questions they have, and I answer questions from the case managers.

13. MSP Procedure 3.3.3, which implements DOC Policy 3.3.3, dictates the process whereby inmates may make complaints on grievable issues to MSP administration. Exhibit B is a true and accurate copy of MSP Procedure 3.3.3, and Exhibit C is a true and accurate copy of DOC Policy 3.3.3.

14. All the necessary policies and procedures explaining the grievance process, including MSP Procedure 3.3.3 and DOC Policy 3.3.3, are available to inmates in the inmate library at MSP.

15. The forms essential to file a grievance are available in the units, through the case managers, or from me directly (for example, if an inmate sends a kite to me asking for a form). In my experience, this is common knowledge among the inmates, and I have often provided forms to inmates upon their request.

16. According to MSP Procedure 3.3.3, an inmate must file a grievance for any "issues including, but not limited to... staff conduct... and other standard grievance matters..." The only exceptions, or "non-grievable issues," are "actions by outside entities not under the jurisdiction of the DOC," and "classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process." Exhibit (Ex.) B at §§ III(A)(2) and B(1), pp. 1—2.

17. There are four steps to the grievance procedure for standard and health services: (1) informal resolution, (2) formal grievance, (3) appeal to the

Warden, and (4) appeal to the DOC director. *Id.* at §§III(F) through (L), pp. 3—8. There are three steps to the grievance procedure for staff conduct and policy and operational procedure grievances: (1) informal resolution, (2) formal grievance, and (3) appeal to the DOC director. *Id.* at §§III(F) through (L), pp. 3—8.

18. A staff conduct or other general grievance must be submitted to MSP within 5 working days of the grievable incident or conduct, and each appeal step has timelines which may be extended upon a showing of good cause in extraordinary circumstances. *Id.*

19. A grievance alleging excessive force or retaliation by MSP staff typically is considered a staff conduct grievance.

20. MSP Procedure 3.3.3 expressly notifies each inmate that, if he fails "to advance to the next level of the grievance Program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." *Id.* at §III(D)(5), p. 2.

21. MSP Procedure 3.3.3 and DOC Policy 3.3.3 provide safeguards against any retaliation by staff: Pursuant to DOC Policy 3.3.3, "offenders who use the grievance process are guaranteed protection from reprisals," and "no . . . staff member who appears to be involved in a grievance complaint will participate in the grievance resolution process." Ex. C, §IV(A)(5)(f) and (w), pp. 2—3. MSP

Procedure 3.3.3 implements these policies by providing: "Staff will not harass, punish, or discipline an inmate for utilizing the inmate grievance process. Employees will be subject to disciplinary action if they violate this directive," and "[e]xcept for the Department Director, any person implicated in a formal inmate grievance will not participate in the decision-making process concerning the grievance." Ex. B, §III(H)(3) and (N)(1), pp. 5, 9.

22. MSP Procedure 3.3.3 further provides that only the grievance coordinator will maintain grievance files; "[t]hey will not be copied into other files." *Id.* at (N)(2), p. 9.

23. My duties as a grievance coordinator required me to receive and track all grievances and appeals filed by inmates at MSP; this position also authorized me to access grievance records, as does my current position as program manager of the grievance department.

24. As part of its regular business, the grievance department maintains records of inmates' formal grievances using the Offender Management Information System (OMIS). In addition, the grievance department utilizes a spreadsheet for all informal resolutions filed by inmates; the forms are kept in the inmates individual file. I have researched grievances filed by Mr. Smith by reviewing the records in OMIS, the spread sheet, and Mr. Smith's individual file. I have reviewed Exhibit D, which is a true and accurate copy of all the inmate grievance

forms filed by Mr. Smith at any time since he has been at MSP. Exhibit D accurately reflects all the documents relating to Mr. Smith's grievance history that are available in OMIS or in his individual file.

25. As shown in Exhibit D, Mr. Smith has used the MSP inmate grievance program seven times: on December 12, 2016, Mr. Smith filed an informal resolution from (hereinafter, "informal") regarding his placement in maximum custody. He did not advance this informal to any other level. None of the defendants in this case are named in that informal. On December 12, 2016 Mr. Smith submitted an informal regarding his placement in the max unit and access to his legal documents. He did not advance this informal to any other level. None of the defendants in this case are named in the informal. On September 7, 2017 Mr. Smith submitted an informal regarding his assessment completed by his case manager which was denied by Roey Pfister, chief of case management on September 22, 2017. Smith followed this by filing a formal grievance 9784 on September 26, 2017. Smith properly exhausted his administrative remedies with respect to Grievance 9784. The DOC Director denied his grievance at the final stage of the Grievance Program on January 4, 2018. Smith does mention Tom Wilson in his appeal to the DOC Director, but is not grieving the actions of him, just his denial at the warden level. No other defendant is mentioned in Grievance 9784. On December 28, 2017, Mr. Smith filed an informal regarding medication

provided in the unit. The informal was granted on January 2, 2018. Smith followed this by filing a formal grievance 10139, which was returned as not processed as the action was granted on the informal resolution. None of the defendants in this case are listed in this informal or formal grievance. On March 8, 2018 Mr. Smith filed an informal regarding an attorney phone call. Unit Manager Barclay returned the informal on March 16, 2018, as not processed, as his action violated the grievance program. Smith followed this by filing formal grievance 10347, which was also returned as not processed on March 20, 2018, by grievance coordinator Regina Dees-Sheffield as his action violated the grievance program. None of the defendants in this case are listed in the informal or formal grievance. On March 21, 2018 Mr. Smith filed an informal resolution regarding his legal mail being sent to the court which was denied by program manager Roxanne Wigert on April 3, 2018. Mr. Smith's grievance file does not contain any formal grievance or appeal advancing his March 21, 2018, informal regarding legal mail. None of the defendants in this case are listed in the informal.

26. Mr. Smith's claims of excessive force and retaliation were grievable pursuant to MSP 3.3.3 because they do not involve entities outside of DOC or other decisions subject to a separate appeal procedure.

27. Mr. Smith did not grieve his claims of excessive force and retaliation.

28. Mr. Smith has never filed an informal or other grievance against any of the defendants.

29. Mr. Smith has never filed an informal or other grievance alleging excessive force or retaliation.

30. Mr. Smith did not exhaust the MSP grievance procedure regarding the allegations in his complaint.

DATED this 21 day of June, 2018.

*Billie Reich*
BILLIE REICH

SUBSCRIBED AND SWORN to before me this _____ day of June, 2018.

REGINA DEES SHEFFIELD
NOTARY PUBLIC for the
State of Montana
Residing at Anaconda, Montana
My Commission Expires
March 30, 2021

Signature of Notary Public