IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH, | CV 17-00119-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| THOMAS WILSON, BALTISAR, SEGOVIA, DOE #1, DOE #2, DOE #3, MICHELLE STEYH, DIRECTOR OF THE MONTANA DEPARTMENT OF CORRECTIONS, LEROY KIRKEGARD, TOM WOOD, PAUL REESE, AMBER EDWARDS, CAPTAIN JASON GRIMMIS, and HELENA PROBATION AND PAROLE OFFICERS MICHELLE JENICEK, DEANNE LOUNGEE, AND CHRISTEN THENNIS,[1] | |
| Defendants. | |

Pending is Plaintiff Jacob Smith's Motion for Leave to File an Amended

Complaint (Doc. 14) and Defendants' Motion for Summary Judgment for failure

to exhaust administrative remedies (Doc. 20).  The parties have fully briefed Mr.

Smith's Motion for Leave to file an Amended Complaint.  The Court will grant

---

[1]The case caption has been amended to reflect the parties added in Mr.
Smith's Amended Complaint.  The Clerk of Court is directed to add these
Defendants to the Court's docket.

1

that motion but recommends the dismissal of several claims contained therein.

Defendants' motion for summary judgment will be denied without prejudice and

subject to renewal as the operative complaint is now the amended complaint.

## I.    MOTION TO AMEND

Rule 15(a) is very liberal and the "court should freely give leave when

justice so requires."  Fed.R.Civ.P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysis*

*West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (*quoting* Fed. R. Civ. P. 15(a)).

However, courts "need not grant leave to amend where the amendment:  (1)

prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

delay in the litigation; or (4) is futile."  *AmerisourceBergen Corp.*, 465 F.3d at

951.  The burden to demonstrate prejudice falls upon the party opposing the

amendment.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

Absent prejudice, or a strong showing of any of the remaining three factors, a

presumption exists under Rule 15(a) in favor of granting leave to amend.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Although some of Mr. Smith's amendments fail to state a claim, Defendants

have not established that the amended complaint prejudices Defendants, is sought

in bad faith, produces an undue delay in the litigation, or is futile.  The motion to

amend the complaint will be granted and the Clerk of Court will be directed to file

the amended complaint.

## II.   SCREENING OF AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.   Standard

Mr. Smith is a prisoner proceeding in forma pauperis so the Court must review his Amended Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the

claim showing that the [plaintiff] is entitled to relief." Fed.R.Civ.P. 8(a)(2). That is, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. 662. First, the Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Second, the Court must determine whether the complaint states a "plausible" claim for relief. *Iqbal*, 556 U.S. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This inquiry is "a context-specific task that requires the reviewing court to

4

draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (*quoting* Fed.R. Civ.P. 8(a)(2)).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardu*, 551 U.S. 89, 94 (2007); *cf.* Fed.R.Civ.P. 8(e) ("Pleadings must be construed so as to do justice").

### B.   Allegations

#### 1.   Original Complaint

In his original Complaint Mr. Smith made two allegations.  First, he alleged Defendants Baltisar, Doe 1, Doe 2 and Doe 3 used excessive force in violation of the Eighth Amendment to the United States Constitution on or about November 3, 2016 when Defendant Baltisar turned Mr. Smith's wrist toward his forearm until it was sprained and another IPS officer nearly broke Mr. Smith's pointer finger. (Complaint, Doc. 2 at 3.)  Secondly, he alleged Defendant Steyh placed him in maximum custody in retaliation for filing complaints against the Department of Corrections and agencies in Lewis and Clark County.  (Complaint, Doc. 2 at 3, 5.)

### 2.    Amended Complaint

Mr. Smith was confined at the Lewis and Clark Detention Center (LCDC) from October 12, 2015 until November 4, 2016.  (DOC Movement History, Doc. 21-6 at 54.)  In his Amended Complaint, Mr. Smith alleges that while at LCDC, Captain Jason Grimmis attempted to bribe him into dismissing a civil complaint against Sgt. Troy Christensen by allowing Mr. Smith to call his attorney after Mr. Smith had been denied the ability to call his attorney for several weeks prior to this bribe.  Mr. Smith then filed complaints against Christensen and Grimmis. (Amended Complaint, Doc. 14-1 at ¶¶ 16-17.)

Mr. Smith alleges that throughout 2015-2016, Helena Probation Officers Deanne Loungee, Christen Thennis, and Michelle Jenicek threatened and violated his witnesses, friends, family, and wife.  He claims these acts were done in retaliation for him filing a complaint alleging that his probation officer Marc Kittleson concealed Mr. Smith's negative urine analysis, violated Mr. Smith, and perjured himself in court by testifying that Mr. Smith was positive for illegal drugs.  Mr. Smith then filed complaints against the Department of Corrections (DOC) and the Probation Officers for their retaliation.  Mr. Smith had also filed a complaint against laboratory technician Mike Soto for slander after Mr. Soto

tested Mr. Smith positive for drugs when he was clean for all drugs.[2]  (Amended

Complaint, Doc. 14-1 at ¶¶ 18-20.)  Mr. Smith contends his lawsuit against Mr.

Soto also included claims of corruption against Probation and Parole, District

Court Judge Reynolds, the Department of Corrections, child protective services,

the public defenders office, LCDC, and Lewis and Clark County prosecutors.

(Amended Complaint, Doc. 14-1 at ¶ 25.)

Mr. Smith also alleges Captain Grimmis, the DOC Director, and Probation

Officers Loungee, Thennis, and Jenicek conspired to retaliate against him for

filing complaints and "overrode him" from LCDC to Montana State Prison (MSP).

This override occurred during criminal proceedings in Helena which Mr. Smith

had been challenging throughout the prior year over numerous court hearings.  He

claims the district court proceedings had not yet been adjudicated.[3]

He also contends Captain Grimmis, the Probation officers, and the DOC

Director retaliated against him in conspiracy with MSP and MDIU unit manager

---

[2]The toxicology report Mr. Smith attached to his proposed amended complaint as evidence that he was "clean for all drugs" is dated October 20, 2014.

[3]According to the DOC Movement History, Mr. Smith was transferred from LCDC to MSP on November 4, 2016 and held in LHU1 until November 10, 2016. On November 10, 2016, he was moved to MDIU and remained there until January 18, 2017 when was returned to LCDC for one day.  He returned to MSP on January 19, 2017 and was held at MDIU until January 24, 2017.  On January 24, 2017 he was placed in Unit C.  (DOC Movement History, Doc. 21-6 at 54.)

Michele Steyh.  Mr. Smith alleges that on November 3, 2016,[4] he was transported

to MSP where Internal Prison Security (IPS) officers attacked him, shackled his

legs, and placed two sets of handcuffs on him.  He claims that in this process the

IPS officers sprained his wrist and his left pointer finger was bent sideways,

seemingly dislocated, and replaced in a back and forth motion.  (Amended

Complaint, Doc. 14-1 at 22.)

Mr. Smith alleges that upon his entry to MSP, his property was taken

including his legal work involving his pending criminal proceedings and civil

complaints.  Mr. Smith's deadline to submit his witnesses and exhibits in his

lawsuit against Mike Soto was mid November 2016.  (Amended Complaint, Doc.

14-1 at ¶ 25.)  On November 10, 2016, Mr. Smith was transported back to LCDC

for a hearing in state district court.  At the jail, Mr. Smith was able to handwrite

his witness and exhibit list and file it with the state clerk of court.  (Amended

Complaint, Doc. 14-1 at ¶ 26.)

Mr. Smith was returned to MSP on November 10, 2016 and placed in the

Martz Diagnostic Intake Unit (MDIU) where he spent a week in solitary

confinement and was denied envelopes and writing materials.  He claims he had

---

[4]As set forth in footnote 3, the Department of Corrections records indicate
that Mr. Smith arrived at MSP on November 4, 2016.  (DOC Movement History,
Doc. 21-6 at 54.)

not broken any rules and was not under investigation.  He alleges his legal work

was again taken from him and searched outside his presence.  When it was

returned, numerous documents were missing including notes and information

pertaining to Mr. Smith's pending criminal proceedings and civil complaints.  Mr.

Smith claims this information included hundreds of names and details involving

numerous cases that were complicated and convoluted.  Mr. Smith requested

information from Defendant Steyh regarding his placement in solitary confinement

and his missing legal work and expressed his intent to file grievances and a civil

complaint.  He contends Defendant Steyh gave Mr. Smith a direct order to "leave

it alone."  (Amended Complaint, Doc. 14-1 at ¶¶ 25-29.)

Mr. Smith was later transported from MDIU to LCDC for another hearing.

Upon returning to MDIU, Mr. Smith's legal work was again taken and searched

outside his presence.  When his legal work was returned, numerous documents

were again missing and Mr. Smith was required to send his legal work out of the

prison.  He mailed his documents to an attorney who never returned them to Mr.

Smith despite multiple requests.  This lost legal work allegedly contained Mr.

Smith's notes regarding details of events of witnesses, illegal acts of prosecutors,

public defenders, district court judges, probation officers, Missoula River Drug

Task Force agents, city police, sheriff deputies, child protective services, and

alleged victims.  He claims the information would have led to discoverable

material evidence that could have exonerated Mr. Smith of multiple felony charges

and contemporaneously implicated the aforementioned agencies and individuals of

corruption and crimes.  He alleges the loss of his legal work was done at the

direction of Defendant Steyh.  (Amended Complaint, Doc. 14-1 at ¶ 30.)

Mr. Smith also claims that he submitted numerous medical requests stating

his finger was not healing, that it was causing him pain and discomfort, and that he

was unable to close his hand due to the limited range of motion.  Mr. Smith was

seen by Dr. Paul Reese and Amber Edwards.  He requested to see a specialist and

complained to the DOC Clinical Services Division.  He claims that nothing has

been done to address his injury.  Mr. Smith is a professional tattoo artist and

creates artwork and the injury to his left pointer finger is a disability to his

livelihood.  (Amended Complaint, Doc. 14-1 at ¶ 31.)

### C.   ANALYSIS

#### 1.   Retaliation

A retaliation claim has five elements.  *Brodheim v. Cry*, 584 F.3d 1262,

1269 (9th Cir. 2009).  First, a plaintiff must allege that the retaliated-against

conduct is protected.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Filing grievances and complaints are protected activities.  *Rhodes v. Robinson*,

10

408 F.3d 559, 568 (9th Cir. 2005)("Of fundamental import to prisoners are their First Amendment rights to file prison grievances and to pursue civil rights litigation in courts.").  Second, a plaintiff must allege defendants took adverse action against him.  *Rhodes*, 408 F.3d at 567.  The adverse action need not be an independent constitutional violation.  *Pratt*, 65 F.3d at 806.  "[T]he mere threat of harm can be an adverse action . . . "  *Brodheim*, 584 F.3d at 1270 (emphasis in original).  Third, a plaintiff must allege a causal connection between the adverse action and the protected conduct.  *Watison*, 668 F.3d at 1114.  Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.  *Watison*, 668 F.3d at 1114 (*citing Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).  Fourth, a plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).  "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm."  *Brodheim*, 584 F.3d at 1269.  However, that harm must be "more than minimal."  *Rhodes*, 408 F.3d at 568 n. 11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation

11

claim at the motion to dismiss stage.  *Rhodes*, 408 F.3d at 569.  Fifth, a plaintiff

must allege "that the prison authorities' retaliatory action did not advance

legitimate goals of the correctional institution . . . "  *Rizzo*, 778 F.2d at 532;

*Watison*, 668 F.3d at 1114-15.

Mr. Smith raises what are construed as three retaliation claims in his

Amended Complaint.  First, he alleges Probation Officers Loungee, Thennis, and

Jenicek threatened and punished his family, friends and witnesses in retaliation for

his litigation activities.  (Doc. 14-1 at ¶ 41.)  Secondly, he contends the DOC

Director, Probation Officers Loungee, Thennis, and Jenicek, and Captain Grimmis

"overrode" him from LCDC to MSP during critical stages of his civil and criminal

proceedings.  (Doc. 14-1 at ¶ 39.)  Third, he contends Defendant Steyh

collaborated with the DOC Director, Probation Officers Loungee, Thennis, and

Jenicek, and Captain Grimmis to place Mr. Smith in solitary confinement upon

reception to MSP, have him assaulted, deny him access to envelopes and writing

materials, and take his legal work in an attempt to freeze his ability to litigate

and/or defend himself in pending legal actions.  (Doc. 14-1 at ¶ 40.)

> a. **Threatening and Violating Friends, Family and Witnesses**

Mr. Smith makes only vague and speculative allegations that his friends,

family and witnesses were allegedly threatened and/or violated by Probation
Officers Loungee, Thennis, and Jenicek in 2015 and 2016 in retaliation for Mr.
Smith's litigation activities.  These allegations are not sufficient to state a
potentially colorable retaliation claim against these defendants.  His vague and
conclusory allegations against these officers amount to, at most, the "formulaic
recitation of the elements" of retaliation which is insufficient to state a viable
claim.  He makes only conclusory statements and provides no factual details to
support this claim.

In addition, these claims are not sufficiently related to the other claims in
Mr. Smith's Amended Complaint.  Federal Rule of Civil Procedure 18(a) allows a
party asserting a claim for relief as an original claim, counterclaim, cross-claim, or
third-party claim to join, either as independent or as alternate claims, numerous
claims against an opposing party.  But Mr. Smith may not bring unrelated claims
against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens
v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607
(7th Cir. 2007).

Mr. Smith may bring a claim against multiple defendants so long as (1) the
claims arise out of the same transaction or occurrence, or series of transactions and
occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P.

13

20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the additional claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party. The Court must be able to discern a relationship between Mr. Smith's claims or there must be a similarity of parties. The fact that all of Mr. Smith's allegations are based on the same type of constitutional violation (i.e., retaliation by different actors on different dates, under different factual events) does not necessarily make claims related for purposes of Rule 18(a).

This relationship cannot be established regarding Mr. Smith's allegations against Probation Officers Loungee, Thennis, and Jenicek. The Court cannot discern a sufficient connection between these allegations of retaliation and the other allegations in the Amended Complaint. Mr. Smith's claims in his original complaint were limited to incidents which occurred at Montana State Prison in November 2016. Mr. Smith's claims of retaliation against the probation officers are not sufficiently related to his allegations regarding his placement at MSP. These claims do not arise out of the same transaction or occurrence or series of transactions and occurrences as the November 2016 placement of Mr. Smith in

14

MSP and the assault at MSP.  There are completely separate factual questions.
Mr. Smith is attempting to bring in unrelated claims against unrelated parties.

Mr. Smith's claims against the probation officers for allegedly threatening other individuals in retaliation for his litigation activities are too vague and conclusory to state a claim and they are not properly joined in this action.  This claim as alleged in Paragraph 41 of the Amended Complaint should be dismissed.

### b.    Transfer from LCDC to MSP

Similarly, Mr. Smith presents no factual allegations to support his speculative and conclusory allegation that he was transferred from LCDC to MSP in retaliation for his litigation activities.  According to a March 12, 2019 Order from the Montana Supreme Court,

> Smith is incarcerated in Montana State Prison, and is currently serving two sentences upon revocation and two 2017 sentences arising from three district courts.  On March 24, 2016, the Butte-Silver Bow County District Court revoked Smith's ten-year suspended sentence from 2009 and imposed a five-year commitment to the DOC for criminal possession of dangerous drugs (Butte-Silver Bow County sentence upon revocation).  On October 26, 2016, the Jefferson County District Court revoked Smith's sentences for theft, criminal endangerment, and criminal possession of dangerous drugs and imposed a five-year DOC term to run concurrently with his Butte-Silver Bow County 03/12/2019 Case Number: OP 18-0674 sentence upon revocation (Jefferson County sentence upon revocation). On February 14, 2017, the Lewis and Clark County District Court sentenced Smith to a five-year DOC term with one year suspended for criminal possession of dangerous drugs, to run

consecutively to the Butte-Silver Bow County sentence upon
revocation and Jefferson County sentence upon revocation. On the
same day, the Lewis and Clark County District Court also sentenced
Smith for bail jumping and imposed a ten-year suspended sentence to
run consecutively to all other sentences.

*Smith v. Guyer*, Montana Supreme Court OP 18-0674 (March 12, 2019).  Mr.

Smith was transferred from LCDC approximately nine days after his Jefferson

County sentence was revoked.  He alleges no facts to support his speculation that

he was transferred due to his litigation activities.  His vague and conclusory

allegations are again, simply the "formulaic recitation of the elements" of

retaliation which is insufficient to state a viable claim.  He simply alleges that he

filed a number of lawsuits and then nine days after his Jefferson County sentence

was revoked he was transferred to MSP.  Such conclusory allegations provide no

plausible basis for inferring that his transfer was done in retaliation for his

exercising his First Amendment rights.  *Iqbal*, 556 U.S. at 680-84 (citations

omitted).  In other words, there is no indication that Mr. Smith's protected

conduct–his litigation activity was the substantial or motivating factor behind his

transfer to prison.

"A claim is facially plausible 'when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged.'"  *Id.* (*quoting Iqbal*, 556 U.S. at 678).  "'Where a

16

complaint pleads facts that are merely consistent with a defendant's liability, it

stops short of the line between possibility and plausibility of entitlement to relief.'

" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th

Cir. 2014) (*quoting Iqbal*, 556 U.S. at 678).   "When considering plausibility,

courts must also consider an 'obvious alternative explanation' for defendant's

behavior."   *Id.* (*quoting Iqbal*, 556 U.S. at 678).

> When faced with two possible explanations, only one of which can be
> true and only one of which results in liability, plaintiffs cannot offer
> allegations that are merely consistent with their favored explanation
> but are also consistent with the alternative explanation. Something
> more is needed, such as facts tending to exclude the possibility that
> the alternative explanation is true, in order to render plaintiffs'
> allegations plausible.

*Id.* at 996–97 (*quoting In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104,

1108 (9th Cir. 2013)).

Here, Mr. Smith alleges his transfer to MSP was done in retaliation for his

litigation activities.   An equally if not more plausible alternative explanation is

that Mr. Smith was transferred because his Jefferson County sentence was

revoked.   Mr. Smith presents absolutely no facts to plausibly suggest that the

transfer was due to his litigation activities.

Further, he provides insufficient allegations to connect this transfer to any

of the Defendants named in this claim.   Mr. Smith names the DOC Director, the

17

Probation Officers, and Jason Grimmis with regard to this claim but he concedes that his allegations of conspiracy against the DOC Director and the Probation Officers alleged in Paragraphs 21-23 of the Amended Complaint are insufficient to state a claim.  (Reply, Doc. 32 at 3.)  In addition, his allegations are insufficient as alleged against Captain Grimmis.  There are no factual allegations to plausibly suggest that Captain Grimmis was responsible for the time of the transfer to MSP.

Mr. Smith provides no factual allegations to suggest that any of these Defendants were responsible for his transfer or that the transfer was done because of Mr. Smith's litigation activities.  This claim should be dismissed.

### c.  Retaliation at MSP

In his last retaliation allegation, Mr. Smith claims Defendant Steyh collaborated with the DOC Director, Probation Officers Loungee, Thennis, and Jenicek, and Captain Grimmis to place Mr. Smith in solitary confinement, have him assaulted, deny him envelopes and writing materials, and take away his legal work taken from him in an attempt to freeze his ability to litigate and/or defend himself in pending legal actions.  (Amended Complaint, Doc. 14-1 at ¶ 40.)  Mr. Smith concedes that these allegations of conspiracy against the DOC Director and the Probation officers with regard to this claim are insufficient to state a claim. (Reply, Doc. 32 at 3.)

18

There is, however, evidence in the record to establish that the decision to place Mr. Smith in solitary confinement was made based upon information provided by LCDC.  Michelle Steyh signed an informal resolution response on January 21, 2017 indicating that the decision to place Mr. Smith in maximum custody upon his entry into MSP was based upon information from LCDC. (Defendants' Disclosure, Doc. 17 at 6.)  A "Notification" dated November 4, 2016 indicates, "Smith is being placed PHC CD due to assaultive and non compliant behavior at Lewis and Clark jail including assaults, bulldogging and intimidation of staff and inmates."  (Notification, Doc. 21-6 at 53.)  Given this connection, the Court will require Captain Grimmis to file a response to Mr. Smith's retaliation claim regarding his placement in solitary upon entry to MSP.

### 2.      Misuse of Force/Assault

Mr. Smith alleges the DOC Director, Montana State Prison administrators, Thomas Wilson, Tom Wood, Daniel Segovia, and Leroy Kirkegard abdicated their responsibilities to curb the known pattern of abuse, assault, and mistreatment of prisoners by their failure to properly and adequately train, supervise, control, or discipline their subordinates.  He contends these Defendants had a custom and practice of acquiescence in the mistreatment of prisoners.  (Amended Complaint, Doc. 14-1 at ¶ 50.)

19

Mr. Smith names Defendants Kirkegard, Wood, Segovia, and the DOC Director in their official capacities.  (Amended Complaint, Doc. 14-1 at 2.)  A lawsuit against a state officer in his official capacity "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent[,]' " and is treated as a lawsuit against the entity.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (*quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).  Here, Defendants Kirkegard, Wood, Segovia, and the DOC Director were all state employees at all times relevant to the Amended Complaint and so naming them in their official capacities is just another way of naming the State of Montana as a defendant.

The State of Montana, however, is immune from suit in federal court by operation of the Eleventh Amendment to the United States Constitution.  The Eleventh Amendment bars suit in federal court against a state or state agencies absent a valid abrogation of immunity by Congress or an express waiver of immunity by the State.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–268 (1997); *Edelman v. Jordan*, 415 U.S. 651, 653 (1974); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

The State of Montana has waived immunity only for tort claims brought in state court.  Mont. Code Ann. § 2-9-101 et seq.  Thus, the State of Montana has

20

Eleventh Amendment immunity from suit in federal court.  In addition, states are not "persons" subject to suit for money damages under section 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65, 71 (1989).  Therefore, Mr. Smith's claims against Defendants Kirkegard, Wood, Segovia, and the DOC Director in their official capacities should be dismissed.

In his reply, Mr. Smith seeks leave to amend the capacities to individual. (Reply, Doc. 32 at 3.)  That request will be granted and Defendants Wilson, Kirkegard, Wood, Segovia, and the DOC Director shall be required to respond to Mr. Smith's supervisory liability claims that these Defendants were aware of a pattern of abuse, assault, and mistreatment of prisoners by their failure to properly and adequately train, supervise, control, or discipline their subordinates as alleged in Paragraphs 43 - 56 of the Amended Complaint.

### 3.     Denial of Due Process and Access to the Courts

Mr. Smith alleges Defendant Steyh directed that he be placed in solitary confinement without due process and that his access to legal documents was denied without due process.  The Court construes Mr. Smith's allegations as raising a potential procedural due process claim regarding his placement in solitary confinement, a potential procedural due process claim regarding the loss of his legal documents, and a potential denial of access to the courts claim.  These

claims, however, fail as a matter of law.

### a.   Due Process–Liberty Interest

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To state a cause of action for deprivation of procedural due process regarding ones liberty, a plaintiff must first establish the existence of a protected liberty interest and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989).  Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process."  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Prisoners are entitled to due process protections when subject to sanctions that implicate "a protected liberty interest–that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014)(*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In considering whether conditions impose an atypical and significant

22

hardship courts may consider the conditions of confinement, the duration of the

sanction, and whether the sanction will affect the duration of the prisoner's

sentence. *Ramirez*, 334 F.3d at 861.

The level of the hardship must be determined on a case-by-case basis, and

"[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent

conclusions for identifying the baseline from which to measure what is atypical

and significant in any particular prison system." *Wilkinson v. Austin*, 545 U.S.

209, 223 (2005). But in making this determination, courts in the Ninth Circuit

look to:

> 1) whether the challenged condition 'mirrored those conditions
> imposed upon inmates in administrative segregation and protective
> custody,' and thus comported with the prison's discretionary
> authority; 2) the duration of the condition, and the degree of restraint
> imposed; and 3) whether the state's action will invariably affect the
> duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (*quoting Sandin*, 515 U.S. at 486-87); *see also Chappell*

*v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Generally, a classification

to a higher custody level does not place an atypical or significant hardship on an

inmate sufficient to give rise to a protected liberty interest. *See Sandin,* 515 U.S.

at 486 *(*placing an inmate in administrative segregation for thirty days "did not

present the type of atypical, significant deprivation in which a state might

23

conceivably create a liberty interest."); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)(finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)(inmates do not have a liberty interest in their classification status).

Mr. Smith alleges he was immediately placed in maximum custody upon his entry into MSP on November 4, 2016 and then placed in solitary confinement for one week when he was returned to MSP after his hearing in Helena on November 10, 2016. Mr. Smith fails to allege how the conditions in maximum custody and/or solitary imposed an atypical and significant hardship. There has been no showing that the conditions in those areas of the prison did not mirror conditions imposed on inmates in administrative segregation or protective custody. *See Ramirez*, 334 F.3d at 861. The duration was relatively short and there is no allegation that his placement in those units would affect the duration of his sentence. The Amended Complaint falls short of alleging conditions that have been found to be an atypical and significant hardship. *See Wilkinson,* 545 U.S. at 223–24 (holding that prisoner was subject to an atypical and significant hardship by being given indefinite detention in a supermax prison where no conversation was permitted and lights were on for 24 hours a day); *Serrano v. Francis*, 345 F.3d

1071, 1078–79 (9th Cir. 2003)(holding that disabled prisoner placed in administrative segregation established an atypical and significant hardship because prisoner was denied use of his wheel chair for more than two months that created severe difficulty for prisoner to practice hygiene and forced prisoner to drag himself across a vermin-infested floor).  Mr. Smith has not shown the deprivation of a protected liberty interest, therefore, his due process claim regarding his placement in maximum custody and/or solitary fails to state a claim and should be dismissed.

### b.    Due Process-Property

As with Mr. Smith's liberty due process claim, in order to state a procedural due process claim regarding the deprivation of property, a plaintiff must first establish the existence of a protected property interest and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989).

Prisoners have a protected interest in their personal property.  *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  An authorized, intentional deprivation of property (one carried out pursuant to established state procedures) is actionable under the Due Process Clause.  *Hudson v. Palmer*, 468 U.S. 517, 532, n. 13 (1984) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v.*

*McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).  Negligent and/or unauthorized intentional deprivations of property by a state employee, however, do not "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527, 535–44 (1981) (no due process violation where a state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

Mr. Smith alleges that numerous documents were missing after his legal materials were searched outside his presence.  The Court construes this as an allegation of either a negligent or an unauthorized intentional deprivation of his documents.  As such, there is no due process violation if Mr. Smith has a meaningful post-deprivation remedy for the loss.  The Montana Tort Claims Act, Mont. Code Ann. §§ 2–9–101, et seq., provides prisoners an adequate post-deprivation remedy.  Requiring Mr. Smith to mail his legal documents out of the prison may have been done pursuant to an established state procedure, but Mr. Smith was denied his documents by his attorney, not state officials.

Mr. Smith's due process claims regarding loss of property fail as a matter of law.

### c.     Access to the Courts

Liberally construed, Mr. Smith may also be attempting to assert a First Amendment claim for denial of access to the courts based on allegations that Defendant Steyh required his legal documents to be sent out of the prison and/or improperly had his legal documents seized or destroyed.  Inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This includes "both a right to meaningful access to the courts and a broader right to petition the government for a redress of his grievances."  *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011).  The right to be free to litigate without active interference "forbids states from erecting barriers that impede the right of access of incarcerated persons." *Silva*, 658 F.3d at 1102 (quotations and citations omitted).  To show a violation of this right to access to the courts, an inmate must demonstrate "actual injury," in that there was a "specific instance" in which he was denied access.  *Sands v. Lewis*, 886 F .2d 1166, 1171 (9th Cir. 1989); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996). The injury requirement is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354–55.  It is only satisfied if an inmate is denied access with regard to a direct appeal from their conviction, habeas petitions, or civil rights actions challenging the conditions of their confinement.  *Id.*  "Impairment of any

other litigating capacity is simply one of the incidental (and perfectly

constitutional) consequences of conviction and incarceration." *Id.*

The only alleged "actual injury" is Mr. Smith's contention that his missing

documents contained notes that would exonerate him.  Mr. Smith's attempt to use

this as a basis to establish an "actual injury" however, is barred by the doctrine set

forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck,* the United States

Supreme Court established that a plaintiff cannot prosecute a section 1983 action

for damages if the success of those claims would necessarily imply that his

existing criminal conviction or sentence is invalid.  Specifically, before a plaintiff

can pursue a section 1983 claim that would render a criminal conviction or

sentence invalid, the plaintiff must establish that the conviction or sentence has

already been invalidated through an appropriate legal action, such as through a

direct appeal of the conviction or other available legal avenues for collateral

attack.  *Heck*, 512 U.S. at 486-87.  Therefore, to determine whether *Heck* operates

to preclude a section 1983 action, the court must consider whether a ruling in

favor of the plaintiff:

> would necessarily imply the invalidity of his conviction or sentence;
> if it would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been
> invalidated.

*Heck*, 512 U.S. at 486-87; *see also Szajer v. City of Los Angeles*, 632 F.3d 607, 610-11 (9th Cir. 2011) (affirming dismissal of section 1983 action that would, if successful, invalidate the plaintiff's criminal conviction).

The Court cannot adjudicate in this § 1983 action whether the missing documents would exonerate Mr. Smith.  A ruling in Mr. Smith's favor regarding whether he suffered an actual injury because the lost documents would have exonerated him would necessarily imply the invalidity of his conviction.  The substance of Mr. Smith's denial of access to the courts claims is precisely what *Heck* prohibits a plaintiff from pursuing in a section 1983 action.  Mr. Smith does not allege that his criminal conviction or sentence has already been reversed through some other legal action or appeal.  Thus, *Heck* bars Mr. Smith's access to the courts claim, and the claim must be dismissed.  *See Spangler v. Wend*, 2013 WL 811408, *1 (W.D. Wash. 2013) (dismissing a claim of the denial of access to the courts as *Heck*-barred).

### 4.    Medical Deliberate Indifference

Mr. Smith alleges the Director of the Montana Department of Corrections was given notice of the serious medical injury Mr. Smith suffered at the hands of MSP officers and failed to take corrective action.  He claims Dr. Paul Reese continually neglected to treat his injury or provide him access to a specialist.  He

alleges Dr. Reese and Amber Edwards stated that the provider would not treat his injury or schedule a specialist appointment due to cost and problems with bureaucracy and that Mr. Smith's parole eligibility gives him the ability to get it fixed on the street.  He claims the deliberate indifference of Paul Reese, Amber Edwards, and DOC Director caused him to suffer a disability in his writing hand and that he frequently suffers pain in his forefinger.  (Amended Complaint, Doc. 14-1 at 12.)  These Defendants will be required to respond to these claims.

Based upon the foregoing, the Court issues the following:

## ORDER

1.  Mr. Smith's Motion to Amend (Doc. 14) is GRANTED.  The Clerk of Court is directed to file the proposed Amended Complaint (Doc. 14-1.)

2.  Defendants Thomas Wilson, Leroy Kirkegard, Tom Wood, Sgt. Segovia, Beau Baltizar, three unknown IPS officers, Michelle Steyh, Jason Grimmis, Paul Reese, and Amber Edwards shall file a response to the following claims in Mr. Smith's Amended Complaint:

a.  Defendant Steyh and Grimmis shall file a response to Mr. Smith's claim that they conspired to place Mr. Smith in solitary confinement upon reception to MSP in retaliation for his litigation activities as alleged in Paragraph 40 of the Amended Complaint;

b.  Defendant Steyh shall file a response to Mr. Smith's claim that she placed him in solitary confinement, gave directions for officers to assault him, directed that his legal materials be taken, and denied him access to envelopes and writing materials in retaliation for his litigation activities as alleged in Paragraph 40 of the Amended Complaint;

c.  Defendants Beau Baltizar and the three unknown IPA officers shall file a response to Mr. Smith's allegations that they used excessive force on November 3 or 4, 2016 as alleged in Paragraphs 18-19 of the Amended Complaint;

d.  Defendants Wilson, Kirkegard, Wood, Segovia, and the DOC Director shall file a response to Mr. Smith's supervisory liability claims that these Defendants were aware of a pattern of abuse, assault and mistreatment of prisoners by their failure to properly and adequately train, supervise, control, or discipline their subordinates as alleged in Paragraphs 43 - 56 of the Amended Complaint; and

e.  Defendants DOC Director, Reese and Edwards shall file a response to Mr. Smith's claims of medical deliberate indifference as alleged in Paragraphs 64-71 of the Amended Complaint.

3.  Pursuant to Fed.R.Civ.P. 4(d), the Director of the Montana Department

31

of Corrections in 2016-2017, Paul Reese, Amber Edwards, and Captain Jason

Grimmis are requested to waive service of summons by executing, or having

counsel execute, the Waiver of Service of Summons.  The Waiver must be

returned to the Court within **thirty (30) days of the entry date reflected on the**

**Notice of Electronic Filing**.  If these Defendants choose to return the Waiver of

Service of Summons, their answer or appropriate motion will be due within 60

days after the entry date of this Order as reflected on the Notice of Electronic

Filing, pursuant to Fed.R.Civ.P. 12(a)(1)(B).

    4.  The Clerk of Court shall forward the documents listed below to legal

counsel for the Department of Corrections and to:

Jason Grimmis                                          Lewis and Clark County Attorney
c/o Lewis & Clark County Detention Center   228 Broadway
221 Breckenridge Street                          Helena, MT  59601
Helena, MT  59601

      *    Amended Complaint (Doc. 14-1);
      *    this Order
      *    a Notice of Lawsuit & Request to Waive Service of Summons;
      *    a Waiver of Service of Summons; and
      *    the Amended Scheduling Order filed contemporaneously herewith.

    Should counsel determine they do not represent Defendants in this matter,

they should notify the Court's Pro Se Department as soon as possible.  Counsel for

Defendant must file a "Notice of Appearance" as a separate document at the time

an Answer or Rule 12 motion is filed.  *See* D. Mont. L.R. 12.2.

5.  Defendants' Motion for Summary Judgment (Doc. 20) is DENIED

WITHOUT PREJUDICE AND SUBJECT TO RENEWAL because the operative

complaint is now the Amended Complaint (Doc. 14-1).

6.  Mr. Smith <u>shall not</u> make any motion for default until at least 70 days

after the date of this Order.

7.  At all times during the pendency of this action, Mr. Smith must

immediately advise the Court and opposing counsel of any change of address and

its effective date.  Failure to file a Notice of Change of Address may result in the

dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

The following should be DISMISSED:

(1)  Mr. Smith's claim that the DOC Director, Probation Officers Jenicek,

Loungee, and Thennis, and Jason Grimmis took adverse action against him by

overriding him from LCDC to MSP during the critical stages of his legal

proceedings as alleged in Paragraph 39 of the Amended Complaint;

(2)  Mr. Smith's claim that the DOC Director and Probation Officers

Jenicek, Loungee, and Thennis conspired with Defendant Steyh as alleged in

Paragraph 40 of the Amended Complaint;

(3)  Mr. Smith's claim that Probation Officers Jenicek, Loungee, and Thennis threatened and punished his family, friends, and witnesses in retaliation for his litigation activities as alleged in Paragraph 41 of the Amended Complaint;

(4)  Defendants DOC Director, Montana State Prison Administrators, Thomas Wilson, Tom Wood, Daniel Segovia and Leroy Kirkegard named in their official capacities;

(5)  Mr. Smith's procedural due process claim regarding his placement in maximum custody and/or solitary confinement as alleged in Paragraphs 57-63 of the Amended Complaint;

(6)  Mr. Smith's procedural due process claim regarding loss of property as alleged in Paragraphs 57-63 of the Amended Complaint; and

(7)  Mr. Smith's denial of access to the courts claim as alleged in Paragraph 57-63 of the Amended Complaint.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[5]  28 U.S.C. § 636.  Failure

---

[5]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is

to timely file written objections may bar a de novo determination by the district

judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed

until entry of the District Court's final judgment.

DATED this 3rd day of April, 2019.


_/s/ John Johnston_____
John Johnston
United States Magistrate

---

made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would
otherwise expire under Rule 6(a)."  Therefore, since Mr. Smith is being served by
mail, he is entitled an additional three (3) days after the period would otherwise
expire.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

|  |  |
|---|---|
| JACOB SMITH,<br><br>          Plaintiff,<br><br>  vs.<br><br>THOMAS WILSON, BALTISAR,<br>SEGOVIA, DOE #1, DOE #2, DOE #3,<br>MICHELLE STEYH, DIRECTOR OF THE<br>MONTANA DEPARTMENT OF<br>CORRECTIONS, LEROY KIRKEGARD,<br>TOM WOOD, PAUL REESE, AMBER<br>EDWARDS, CAPTAIN JASON GRIMMIS,<br>and HELENA PROBATION AND PAROLE<br>OFFICERS MICHELLE JENICEK,<br>DEANNE LOUNGEE, AND CHRISTEN<br>THENNIS,<br><br>          Defendants. | CV 17-00119-H-DLC-JTJ<br><br><br><br><br>RULE 4 NOTICE OF A LAWSUIT<br>AND REQUEST TO WAIVE<br>SERVICE OF SUMMONS |

TO:

| Legal Counsel for the | Jason Grimmis | Lewis and Clark |
|---|---|---|
| Montana Department of | c/o Lewis & Clark County | County Attorney |
| Corrections | Detention Center | 228 Broadway |
| P.O. Box 201301 | 221 Breckenridge Street | Helena, MT  59601 |
| Helena, MT 59620-1301 | Helena, MT  59601 | |

A lawsuit has been filed against individuals you may represent in this Court
under the number shown above.  A copy of the Amended Complaint (Doc. 14-1) is
attached.

1

This is not a summons or an official notice from the court.  It is a request that, to avoid the cost of service by the U.S. Marshals Service, you waive formal service of a summons by signing and returning the enclosed waiver.  To avoid these expenses, you must file the signed waiver within 30 days from the date shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if Defendants was served on the date the waiver is filed, but no summons will be served on Defendants and they will have 60 days from the date this notice is sent (see the date below) to answer the Amended Complaint.

If you do not return the signed waiver within the time indicated, the Court will order the U.S. Marshals Service to personally serve the summons and Amended Complaint on Defendants and may impose the full costs of such service.

Please read the statement below about the duty to avoid unnecessary expenses.

DATED this 3rd day of April, 2019.


   */s/ John Johnston*
John Johnston
United States Magistrate

2

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH, | CV 17-00119-H-DLC-JTJ |
| Plaintiff, | |
| vs. | |
| THOMAS WILSON, BALTISAR, SEGOVIA, DOE #1, DOE #2, DOE #3, MICHELLE STEYH, DIRECTOR OF THE MONTANA DEPARTMENT OF CORRECTIONS, LEROY KIRKEGARD, TOM WOOD, PAUL REESE, AMBER EDWARDS, CAPTAIN JASON GRIMMIS, and HELENA PROBATION AND PAROLE OFFICERS MICHELLE JENICEK, DEANNE LOUNGEE, AND CHRISTEN THENNIS, | RULE 4 WAVIER OF SERVICE OF SUMMONS |
| Defendants. | |

TO:   The U.S. District Court for the District of Montana

The following Defendants acknowledge receipt of your request to waive service of summons in this case.  Defendants also received a copy of the Amended Complaint (Doc. 14-1).  I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the Amended Complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

1

_____;   _____;

_____;   _____;

The above-named Defendants understands that they will keep all defenses or objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but waive any objections to the absence of a summons or of service.

Defendants also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to so default judgment will be entered against them.

Date: _____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

2