IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH, | CV 17-00119-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| THOMAS WILSON, LEROY KIRKEGARD, BEAU BALTEZAR, DANEL SEGOVIA, MIKE BATISTA, TOM WOOD, MICHELE STEYH, MITCHELL CALES, JASON GRIMMIS, PAUL REES, and AMBER EDWARDS,[1] | |
| Defendants. | |

Pending is Plaintiff Jacob Smith's Motion for Leave to Amend Complaint (Doc. 61), Motion to Exclude Defendants' Deposition of Plaintiff (Doc. 62), and Motion to Modify Scheduling Order (Doc. 68). The Motion to Amend will be granted, the motion to exclude the deposition will be denied, and the motion to modify the scheduling order will be granted in part.

---

[1]The case caption has been amended to reflect the parties named in Mr. Smith's Second Amended Complaint.

## I.     MOTION TO AMEND

Rule 15(a) is very liberal and the "court should freely give leave when justice so requires."  Fed.R.Civ.P. 15(a)(2); *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (*quoting* Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile."  *AmerisourceBergen Corp.*, 465 F.3d at 951.  The burden to demonstrate prejudice falls upon the party opposing the amendment.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Absent prejudice, or a strong showing of any of the remaining three factors, a presumption exists under Rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In the April 3, 2019 Amended Scheduling Order, the Court indicated it would not accept any further motions to amend without a showing of good cause. Mr. Smith has demonstrated good cause to file a second amended complaint based upon Defendants' failure to timely identify individuals with information that may be used in proving or denying any party's claims or defenses as required by the Court's March 23, 2018 Scheduling Order.  (Doc. 10.)

In his original Complaint filed December 29, 2017, Mr. Smith alleged that

upon his arrival at Montana State Prison ("MSP") from Lewis and Clark County

he was transported to "Tower One" where numerous Inner Perimeter Security

("IPS") officers arrived and restrained him.  He specifically alleged that Defendant

Baltezar turned his wrist toward his forearm until it was sprained and that another

IPS officer nearly broke his pointer finger causing permanent damage and

suffering.  (Complaint, Doc. 2 at 3-4.)  Mr. Smith identified John Does 1-3 as IPS

officers employed at MSP who were involved in his transport to Tower One on

November 3, 2016.[2]  On January 11, 2018, the Court required all Defendants

(including the John Doe defendants) to respond to the Complaint.  Only

Defendants Wilson, Baltezar, Segovia, and Steyh filed an Answer.  (Doc. 9.)  The

Court then issued a Scheduling Order on March 23, 2018 requiring the parties to

identify "the name of each individual known or believed to have information that

may be used in proving or denying any party's claims or defenses and a summary

of that information."  (Scheduling Order, Doc. 10 at 2.)  Defendants filed a

disclosure statement on May 22, 2018 identifying only Jacob Smith, Tom Wilson,

Beau Baltezar, Daniel Segovia, Michelle Steyh, Billie Reich, and Kristy Cobban

as individuals with information.  (Disclosure Statement, Doc. 17 at 16.)

---

[2]Based upon documents presented by Defendants it seems clear that Mr.
Smith was transported from Lewis and Clark County on November 4, 2016 and
not November 3, 2016 as alleged in the original Complaint.

3

Mr. Smith filed a motion for leave to file an amended complaint which was granted on April 3, 2019 and an Amended Scheduling Order was issued.  (Doc. 33-35.)  On July 24, 2019, Defendants Wilson, Baltezar, Segovia, Steyh, Batista, Rees, Edwards, Kirkegard, and Wood filed a supplemental disclosure statement and identified the following additional individuals as persons that may have knowledge that may be used in proving or denying a party's claim or defense: LeRoy Kirkegard, Mike Batista, Tom Wood, Medical Staff, Amber Edwards, Paul Rees, Paul Harmon, Mitchell Cales, Daniel Fosness, Same Casey, and other IPS team members.  (Doc. 59 at 3-4.)

Although Defendants oppose Mr. Smith's motion to now amend his complaint to provide names of the John Does named in his original complaint, they provide no explanation as to why the IPS officers involved in the transport of Mr. Smith on November 4, 2016 were not identified in their original disclosure statement.  Defendants are estopped from objecting to Mr. Smith's amendment on the grounds that he did not attempt to determine the identities of the John Doe defendants through formal discovery.  They should have timely identified Officers Harmon, Cales, and Fosness as individuals with knowledge of the November 4, 2016 transport of Mr. Smith in their May 22, 2018 disclosure.  Accordingly, the August 19, 2019 motion to amend the complaint will be granted and the Clerk of

Court will be directed to file the second amended complaint.

## II.    SCREENING OF SECOND AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915, 1915A

### A.    Standard

Mr. Smith is a prisoner proceeding in forma pauperis so the Court must review his Amended Complaint under 28 U.S.C. §§ 1915, 1915A.  Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "A case is malicious if it was filed with the intention or desire to harm another."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005).  A complaint fails to state a claim upon which relief may be granted if a plaintiff fails to allege the "grounds" of his "entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted).

An amended complaint replaces the original complaints, and as such the original complaints no longer serves a function in the case.  *Ferdik v. Bonzelet*,

963 F.2d 1258, 1262 (9th Cir. 1992). As such, the Second Amended Complaint (Doc. 72-2) will be the only operative pleading in this case.

**B.    Allegations in Second Amended Complaint**

Mr. Smith alleges he was confined at the Lewis and Clark Detention Center (LCDC) from October 2015 until November 4, 2016. During this time, he engaged in filing numerous grievances, complaints, and lawsuits many of which were lodged against Defendant Grimmis and his friends and colleagues, and Department of Corrections ("DOC") employees and contractors. He claims Defendant Grimmis communicated false information to DOC employees with the intention to override Mr. Smith to prison on November 4, 2016.

Mr. Smith was transported to MSP and delivered to IPS officers at Tower One. He claims Defendant Baltezar assaulted him by twisting his right wrist which was sprained and that Officer Mitchell Cales dislocated his left index finger in a back and forth motion. Mr. Smith was escorted to Locked Housing Unit 1 where Baltezar told him that if he started filing grievances he would never get out. He claims Defendants Wilson, Kirkegard, Wood, Segovia and Batista were aware of a number of incidents of assault, misuse of force, or mistreatement of prisoners and acquiesced, failed to train, supervise, discipline, investigate, and control their officers.

6

### C.    Analysis

The Court has considered whether Mr. Smith's claims against Defendants

Grimmis, Baltezar, Wilson, Kirkegard, Wood, Segovia, Batista, Rees, and

Edwards are frivolous, malicious, fails to state a claim, or seeks solely monetary

relief from a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

Dismissal is not appropriate at this time.  Mr. Smith's allegations against these

Defendants as alleged in the Second Amended Complaint "are sufficient to meet

the low threshold for proceeding past the screening stage," and are not subject to

sua sponte dismissal pursuant to 28 U.S.C. § 1915A(b)(1) or (2).  *Wilhelm v.*

*Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).  These Defendants must respond to

the Second Amended Complaint.

Similarly, the Court finds that Mr. Smith's allegations against Defendant

Cales as alleged in the Second Amended Complaint "are sufficient to meet the low

threshold for proceeding past the screening stage," and are not subject to sua

sponte dismissal pursuant to 28 U.S.C. § 1915A(b)(1) or (2).  *Wilhelm v. Rotman*,

680 F.3d 1113, 1123 (9th Cir. 2012).  Defendant Cales must respond to the

Second Amended Complaint.

Defendant Steyh was previously required to respond to Mr. Smith's claim

that she collaborated with the DOC Director, Probation Officers Loungee,

7

Thennis, and Jenicek, and Captain Grimmis to place Mr. Smith in solitary confinement upon reception to MSP, have him assaulted, deny him access to envelopes and writing materials, and take his legal work in an attempt to freeze his ability to litigate and/or defend himself in pending legal actions.  (Doc. 14-1 at ¶ 40.)  In his reply regarding his motion to amend, Mr. Smith acknowledges that he "has learned by and through discovery from Defendants that a conspiracy between Grimmis and Steyh to retaliate against Mr. Smith for his litigious activities cannot be substantiated."  (Doc. 72 at 2.)  Rather, he now contends that Defendants Steyh had a duty to provide him with an opportunity to be present at a hearing and to present evidence on his behalf.  He claims she was "negligent by violating MSP policy."  (Doc. 72 at 2-3.)

As set forth in the Court's April 3, 2019 analyzing his first motion to amend (Doc. 33), the Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. XIV, § 1; *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To state a cause of action for deprivation of procedural due process regarding ones liberty, a plaintiff must first establish the existence of a protected liberty interest and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.

8

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–60 (1989).  Only

if the prisoner alleges facts sufficient to show a protected liberty interest must

courts next consider "whether the procedures used to deprive that liberty satisfied

Due Process." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Prisoners are entitled to due process protections when subject to sanctions

that implicate "a protected liberty interest–that is, where the conditions of

confinement impose an 'atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life.'" *Brown v. Oregon Dept. of Corrections*,

751 F.3d 983, 987 (9th Cir. 2014)(*quoting Sandin v. Conner*, 515 U.S. 472, 484

(1995)).  In considering whether conditions impose an atypical and significant

hardship courts may consider the conditions of confinement, the duration of the

sanction, and whether the sanction will affect the duration of the prisoner's

sentence.  *Ramirez*, 334 F.3d at 861.

The level of the hardship must be determined on a case-by-case basis, and

"[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent

conclusions for identifying the baseline from which to measure what is atypical

and significant in any particular prison system." *Wilkinson v. Austin*, 545 U.S.

209, 223 (2005).  But in making this determination, courts in the Ninth Circuit

look to:

1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (*quoting Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013).  Generally, a classification to a higher custody level does not place an atypical or significant hardship on an inmate sufficient to give rise to a protected liberty interest.  *See Sandin,* 515 U.S. at 486 *(*placing an inmate in administrative segregation for thirty days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.")*; Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007)(finding no "atypical and significant deprivation" where prisoner failed to allege conditions at level IV prison differed significantly from those at a level III prison); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)(inmates do not have a liberty interest in their classification status).

Mr. Smith's only allegation against Defendant Steyh in the Second Amended Complaint is that she failed to provide him a hearing prior to his placement in solitary confinement for one week when he was returned to MSP after his hearing in Helena on November 10, 2016.  Mr. Smith has still failed to

allege how the conditions in maximum custody and/or solitary imposed an atypical and significant hardship. There has been no showing that the conditions in those areas of the prison did not mirror conditions imposed on inmates in administrative segregation or protective custody. *See Ramirez*, 334 F.3d at 861. The duration was relatively short and there is no allegation that his placement in those units would affect the duration of his sentence. The Second Amended Complaint falls short of alleging conditions that have been found to be an atypical and significant hardship. *See Wilkinson,* 545 U.S. at 223–24 (holding that prisoner was subject to an atypical and significant hardship by being given indefinite detention in a supermax prison where no conversation was permitted and lights were on for 24 hours a day); *Serrano v. Francis*, 345 F.3d 1071, 1078–79 (9th Cir. 2003)(holding that disabled prisoner placed in administrative segregation established an atypical and significant hardship because prisoner was denied use of his wheel chair for more than two months that created severe difficulty for prisoner to practice hygiene and forced prisoner to drag himself across a vermin-infested floor). Mr. Smith has not shown the deprivation of a protected liberty interest, therefore, his due process claim regarding his placement in solitary confinement fails to state a claim and should be dismissed.

Similarly, Mr. Smith's negligence claim against Defendant Steyh fails as a

matter of law.  Pursuant to Mont. Code Ann. § 2-9-305, Steyh is not the proper

party to such a claim and therefore the negligence claim must also be dismissed.

Given that all claims against Defendant Steyh are recommended for dismissal,

Defendant Steyh should be dismissed from this action.

## III.  MOTION TO EXCLUDE DEPOSITION OF PLAINTIFF

Mr. Smith appeared for a deposition on August 8, 2019 after the DOC

defendants noticed his deposition.  He claims Defendant Grimmis did not serve a

notice of deposition and therefore should not have been allowed to appear at the

deposition or to examine Mr. Smith.  (Doc. 62.)  Defendants are correct that

nothing in the Court's orders or Rule 30 supports the proposition that a plaintiff is

entitled to separate notice from each defendant prior to the taking of his

deposition.

There is no formal requirement for a party seeking to cross-examine a

deponent to serve a separate notice of deposition.  *FCC v. Mizuho Medy Co.*, 257

F.R.D. 679, 681-682 (2009 U.S. Dist. LEXIS 54032) (S.D. Cal. 2009).  "In a

multi-party lawsuit, one party may notice the deposition and other parties may

attend and cross-examine the deponent without also having to notice the

deposition." *Id*. citing *Smith v. Logansport Comm. School Corp.*, 139 F.R.D. 637,

642 (1991 U.S. Dist. LEXIS 17667)(N.D.Ind.1991).

The motion to exclude the deposition of Mr. Smith will be denied.

## IV.  MOTION TO MODIFY SCHEDULING ORDER

On April 3, 2019, the Court issued an Amended Scheduling Order requiring that all discovery requests be filed on or before July 23, 2019 and all discovery be completed by August 26, 2019.  (Doc. 35.)  On September 9, 2019, Mr. Smith filed a motion to modify the scheduling order indicating that he was attempting to resolve several discovery disputes with Defendant Grimmis and the discovery process has been hindered due to his incarceration.  He also indicates he received a number of discs with video evidence and has not been able to view the evidence.

The DOC defendants have stipulated to an extended schedule which the Court will adopt as to those Defendants.  Defendant Grimmis, however, objects to the modifications as to him arguing that even though the Court's scheduling order was issued on April 3, 2019, Mr. Smith waited until July 18, 2019 to mail his first discovery requests.[3]  Mr. Smith then mailed a second set of discovery request to Defendant Grimmis on September 11, 2019 after the expiration of the discovery deadline.  As the Court's Scheduling Order required that a request to modify the scheduling order must be made before the expiration of the deadline at issue (Doc.

---

[3]Technically, Mr. Smith was not allowed to engage in discovery until after June 25, 2019 when he filed his disclosure statement.  (See Amended Scheduling Order, Doc. 35 at 6, ¶ F.)

35 at 7), the motion to reopen discovery as to Defendant Grimmis will be denied.

Defendant Grimmis need not respond to Mr. Smith's September 11, 2019

discovery requests and Mr. Smith may not send any further discovery requests to

Defendant Grimmis. Defendant Grimmis may not participate in any further

discovery including asking questions at any additional depositions which may be

taken in this matter.

The DOC Defendants having reached a stipulation to extend discovery, the

Court will modify the scheduling order as to those Defendants who have agreed to

the modifications.

To the extent they have not already done so, the DOC Defendants must

make arrangements for Mr. Smith to view/listen to any audio/visual discovery that

may not be permitted into the institution where he is incarcerated.

Based upon the foregoing, the Court issues the following:

## ORDER

1. Mr. Smith's Motion for Leave to Amend (Doc. 61) is GRANTED. The

Clerk of Court is directed to file the proposed Second Amended Complaint (Doc.

72-2.) The Clerk of Court shall add Defendant Mitchell Cales to the docket.

2. All Defendants except Defendant Steyh shall file a response to the

Second Amended Complaint on or before November 1, 2019.

14

3.  On or before October 18, 2019, counsel for the Department of Corrections shall advise the Court whether they will accept service on behalf of Defendant Cales.  If so, Defendant Cales's answer or appropriate motion will be due on or before November 1, 2019.

4.  Mr. Smith's Motion to Exclude Defendants Deposition of Plaintiff (Doc. 62) is DENIED.

5.  Pursuant to Judge Christensen's May 30, 2019 Order, the Clerk of Court is directed to terminate Defendants Jenicek, Loungee, and Thennis on the Court's docket.

6.  Mr. Smith's Motion to Modify Scheduling Order (Doc. 68) is GRANTED IN PART AND DENIED IN PART.  The deadlines set forth in the Court's Amended Scheduling Order (Doc. 35) are amended as follows:

a.  The DOC Defendants and Mr. Smith shall serve all discovery requests on or before **November 23, 2019**.

b.  All discovery shall be completed by **December 23, 2019**.  A duty to supplement beyond the deadline may be imposed by Fed. R. Civ. P. 26(e).

c.  All pretrial motions with supporting briefs regarding Mr. Smith's claims against the DOC Defendants shall be filed and served on or before **January 23, 2020**.

d.  If no dispositive motions are filed on or before the motion deadline, defense counsel must assume responsibility for convening a conference of all parties for the purpose of preparing a Proposed Final Pretrial Order. Counsel shall ensure that all tasks are accomplished as set forth in the Attachment to the Court's March 23, 2018 Scheduling Order (Doc. 10) on or before **February 21, 2020**.

7.  At all times during the pendency of this action, Mr. Smith must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a Notice of Change of Address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

1.  As Mr. Smith did not name John Doe Defendants in his Second Amended Complaint, the Three Unknown IPS Officers (John Does #1-3) should be DISMISSED.

2.  Mr. Smith's procedural due process and negligence claims raised against Defendant Steyh should be DISMISSED and Defendant Steyh's Motion for Summary Judgment (Doc. 88) should be DENIED AS MOOT.  Defendant Steyh should be DISMISSED as a Defendant in this action.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service hereof.[4]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 8th day of October, 2019.


_/s/ John Johnston_____
John Johnston
United States Magistrate Judge

---

[4]Mr. Smith shall have an additional three (3) days after the fourteen day period would otherwise expires to file his objections.